IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EUGENE L. DICKERSON,                    :
                                        :
            Plaintiff,                  :        CIVIL NO. 1:12-CV-0854
                                        :
      v.                                :        Hon. John E. Jones III
                                        :
CORRECTIONS OFFICER                     :
SANATUCCI, *et al.*,                    :
                                        :
            Defendants.                 :

## MEMORANDUM

October 24, 2012

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Plaintiff Eugene L. Dickerson ("Plaintiff" or "Dickerson"), an inmate presently confined at the State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania, initiated the above action *pro se* by filing a civil rights Complaint under the provisions of 42 U.S.C. § 1983. (Doc. 1.) The Complaint raises claims based upon events that allegedly occurred while Dickerson was confined at the State Correctional Institution Camp Hill ("SCI Camp Hill") in Camp Hill, Pennsylvania. (Doc. 1.) Named as Defendants are SCI Camp Hill Corrections Officers Sanatucci, McBeth, and Stum.

Service of the Complaint was directed by Order dated May 10, 2012. (Doc. 7.)

Presently before the Court is a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which was filed on July 17, 2012 on behalf of Defendants. (Doc. 11.) For the reasons set forth below, Defendants' Motion will be granted.

Also pending is Dickerson's Motion to Uphold Complaint (Doc. 15), filed on August 21, 2012, which we construe, along with his supporting brief (Doc. 14) and exhibits (Doc. 14-1), as his opposition to Defendants' Motion to Dismiss. Based upon our determination that the dismissal of Dickerson's Complaint for failure to exhaust administrative remedies is appropriate, we shall deny his Motion to Uphold Complaint.

## I.      MOTION TO DISMISS

### A.      Allegations of the Complaint

In his Complaint, filed on May 8, 2012[1], Dickerson alleges that Defendant McBeth directed verbal insults at him, commented on Dickerson's HIV positive status, and that he physically assaulted him. He alleges that Defendant Stum verbally insulted him, denied him access to the yard and lunch, and refused to allow him to

---

[1]The Complaint is dated May 14, 2012. (*See* Doc. 1 at 5.) However, the postmark on the envelope containing the Complaint is May 7, 2012, and the Complaint was received and filed by the Clerk of Court on May 8, 2012. (*See id.* at 6.)

shower following afternoon chores. Finally, Dickerson alleges that Defendant Sanatucci caused him to miss the appointed time for pill line on one day. Dickerson's specific allegations against each of the three Defendants are as follows:

### 1. Defendant McBeth

Dickerson alleges that, on March 28, March 29, and April 10, 2012, Defendant McBeth verbally insulted him by making comments about his sexuality, and in his comment on March 29, referred openly to Dickerson's HIV status. (Doc. 1 at 2 ¶¶ 1-3.) Dickerson further alleges that, on April 18, 2012, he was having an asthma attack and McBeth struck him in the chest so hard that it triggered another asthma attack and said, "When I give you an order freak, you follow it!" (*Id.* at 3 ¶ 4.) Dickerson alleges that the assault left him with "bruised ribs and visible bruise [*sic*]", and that his injuries were photographed and x-rayed, and an investigation is pending. (*Id.*)

### 2. Defendant Stum

Dickerson alleges that, on March 29 and April 4, 2012, Defendant Stum directed verbal insults toward him that mocked his sexuality. (*Id.* at 3-4 ¶¶ 5, 7.) He also alleges that, on March 29, Stum denied him access to the yard and lunch (*id.* At 3 5), and that, on April 2, Stum refused to allow Dickerson to take a shower after he completed afternoon chores and then locked Dickerson in his cell, which resulted in

the denial of lunch and access to the yard.  (*Id.* at 3 ¶ 6.)

### 3.     Defendant Sanatucci

Dickerson alleges that, on April 16, 2012, while Sanatucci was working the 6-2 shift, he gave Dickerson an order to go cut grass and that, as a result, Dickerson missed pill line.  (*Id.* at 4 ¶ 8.)  He alleges that, after he finished his task, he asked Sanatucci if he could go to get his pills, and Sanatucci told him to wait for the medical nurse to call him.  (*Id.*)  Dickerson renewed his request a half hour later, and Sanatucci replied that "no one called and he wasn't sending me down."  (*Id.*)  When Dickerson went to pill line at 8PM, the nurse told him that he had called two times for him and that Dickerson cannot miss doses of the "life sustaining medications" that he takes. (*Id.*)  He alleges that Sanatucci refused him medical services.  (*Id.*)

As relief, Dickerson requests financial compensation for mental and emotional distress, including severe depression, that he experienced as a result of harassment by these corrections officers; the cruel and unusual punishment that he received at the hands of these officers, including the denial of showers, meals, and recreation; and the physical pain caused by McBeth's assault on him and "fear of imminent danger because of my legal retaliation."  (*Id.* at 5 § V.)

**B.** **Standard of Review**

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal,* 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later

formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly,* 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal,* 556 U.S. at 679. Next, the district court must identify "the 'nub' of the ... complaint-the well-pleaded, nonconclusory factual allegation[s]." *Id.* at 680. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id* . However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly,* 550 U.S. at 588 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public

6

record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006).

Finally, the sufficiency of a *pro se* pleading must be construed liberally in favor of a plaintiff, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89 (2007). Moreover, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, unless the Court finds bad faith, undue delay, prejudice or futility. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 110-11 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000).

## C. Discussion

### 1. Exhaustion Requirement

Defendants move for dismissal of Plaintiff's Complaint under the provisions of Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the basis that he has failed to exhaust his administrative remedies with respect to all of his claims. (*See* Doc. 12, Defs.' Br., at 4-7.) Because a prisoner's failure to exhaust is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), a defendant may, "in appropriate cases," move to dismiss the complaint on that basis.[2] *Brown v. Croak*, 312

---

[2]The Unsworn Declaration of Tracy Williams (Doc. 12-1 at 15-18), which was submitted by Defendants in support of their Motion to Dismiss, will not be relied upon in considering their Motion. Therefore, in light of the fact that the issue of exhaustion turns on the indisputably

(continued...)

F.3d 109, 111 (3d Cir. 2002).

The Prison Litigation Reform Act ("PLRA") requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust all available administrative remedies before raising claims under § 1983 concerning prison conditions. *See id.* This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y.

---

[2](...continued)

authentic documents related to Plaintiff's administrative remedies, copies of which have been submitted both by Defendants (Doc. 12-1 at 2-14) and Plaintiff (Doc. 14-1), the Court will consider these documents without the need to convert Defendants' Motion to one for summary judgment. *See Spruill v. Gillis*, 372 F.3d 218, 223 & n.2 (3d Cir. 2004).

1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis*, 204 F.3d at 71.

The PLRA also mandates that inmates "properly" exhaust administrative remedies **before** filing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  *See also Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006) (quoting *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.")).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."  *Id.* at 90-91.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id*. at 93 (quoting *Porter,* 534 U.S. at 525)).  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill, supra*, 372 F.3d at 227-32 ("[P]rison grievance procedures supply the yardstick for measuring procedural default.")  A procedural default, "either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Gallego v. United States,* Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

Under the grievance procedure provided by the Pennsylvania Department of Corrections ("DOC"), in order to fully exhaust an issue, an inmate must complete three (3) levels of review. First, an inmate must file a grievance with the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. (Doc. 12-1 at 25, DC-ADM 804, Inmate Grievance System Procedures Manual, § 1 A. 14.) Following the issuance of an initial review response, an inmate must appeal in writing to the Facility Manager within fifteen (15) working days from the date of the response. (*Id.* at 31, § 2 A. 1.) Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager must then submit an Inmate Appeal to Final Review to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen (15) working days from the date of the Facility Manager's decision. (*Id.* at 33, § 2 B. 1.) No appeal can be made to the SOIGA until an inmate has complied with all procedures established for initial review and appeal to the Facility Manager, and no appeal is final until considered by the SOIGA. (*Id.*; Doc. 12-1 at 40, DC-ADM 804 Glossary of Terms (defining "Final

Review" as "The third step of the formal Initial Grievance process during which the Secretary's Office of Inmate Grievance Appeals reviews the decision of the Facility Manager/designee.").)

## 2. Analysis

It is apparent upon review of the record in this case that Dickerson has failed to exhaust his administrative remedies with respect to all of the claims he seeks to pursue in the instant lawsuit. Specifically, the record shows that, while Dickerson filed three grievances concerning the claims he raises in his Complaint, and he appealed the initial responses to each of those grievances to the Facility Manager, he failed to appeal to Final Review with the SOIGA. The details of our review of the record with respect to Dickerson's claims against each of Defendants are as follows.

### a. Defendant McBeth

On May 11, 2012, while he was housed at SCI Dallas[3], Dickerson filed Grievance Number 412528 with the Facility Grievance Coordinator at SCI Camp Hill as an "emergency grievance" concerning the alleged assault upon him by Defendant McBeth on April 18, 2012 at SCI Camp Hill. (Doc. 12-1 at 13, Official Inmate

---

[3]As reflected by the DOC Moves Report submitted as an Exhibit by Defendants along with the instant Motion to Dismiss, Dickerson was confined at SCI Camp Hill from November 23, 2011 until May 2, 2012, at which time he was transferred to his current place of incarceration at SCI Dallas. (*See* Doc. 12-1 at 1.)

Grievance.)

In his grievance, Dickerson alleges that, on that date, McBeth "violently punched me in the chest after I had visibly shown signs of an asthma attack because I didn't follow his order to lock in my cell. He left a visible fist print in my chest which were photographed by Nurse J. Dittleline and Dr. Fields. I was also given pain medication." (*Id.*)

Dickerson further alleges that "C/O McBeth also has made comments about my HIV status by saying 'Have you taken your 123 pills today?' and also harrassed me daily with namecalling and gender oriented jokes." (*Id.*)

The grievance was accompanied by a letter from Dickerson, also dated May 11, 2012, explaining that he was filing an "emergency grievance" on this issue because, at the time of the incident, he was thrown in the RHU and was refused paperwork, but that he had been transferred to his "home jail" and was able to retrieve paperwork. (*Id.* at 14.)

On June 27, 2012, an Initial Review Response was issued by an Intelligence Captain stating that, after a complete investigation by the Office of Special Investigations and Intelligence, Dickerson's allegations "have come to be unfounded due to the fact that staff have denied your allegations and no evidence supports your

claims." (*Id.* at 12.)  The Intelligence Captain therefore stated that the grievance was considered resolved and closed and the charges were dismissed.  (*Id.*)

It is apparent upon review of the record that Dickerson failed to fully exhaust his administrative remedies with respect to his claims against Defendant McBeth. First, we observe that Dickerson did not even file his grievance until May 11, 2012, several days after he initiated this lawsuit, and thus he failed to comply with the PLRA's requirement that he fully exhaust his administrative remedies before filing suit.  *See Woodford*, *supra*, 548 U.S. at 92; *Oriakhi*, *supra*, 165 Fed. Appx. at 993. Moreover, it is apparent from the record that Dickerson did not appeal to Final Review following the issuance of the denial of his grievance on June 27, 2012. Therefore, we must dismiss Dickerson's claims against Defendant McBeth.

### b.  Defendant Stum

On April 17, 2012, Dickerson filed Grievance No. 408818 with the Facility Grievance Coordinator at SCI Camp Hill stating that, on that date, after the morning work was done, security officers searched his cell and that, after finding him in possession "of what they said was contraband", he was fired.  (Doc. 12-1 at 10.)  After moving his belongings, Dickerson asked Corrections Officer Stum if he could take a shower, to which he replied, "Hell no!"  (*Id.*)  After Dickerson complained about

being sweaty from working that morning, Stum allegedly called him "dirty ass" and "Girl". (*Id.*) Dickerson goes on to complain about Stum's alleged homophobia and lack of professionalism toward gay inmates. (*Id.*) He alleges that Stum refused to provide him with two grievance forms. (*Id.*)

On April 30, 2012, the Unit Manager at SCI Camp Hill replied to Dickerson stating that, after investigation, it was verified that, on April 17, 2012, Dickerson was found to be in possession of contraband, namely hand lotion and hand sanitizer bottles that he removed from the Security Office trash cans while he was entrusted to clean the area, and that, upon discovery of the items by the Security Search Team, he was removed from his job as a tier worker. (*Id.*) The response further states, "Officer Stum admits he refused you a shower even though you were cleaning that day; however, he denies calling you derogatory names and calling attention to your sexuality." (*Id.*) The response also refers to an attached note which Dickerson wrote to Officer Stum and Officer Goss. (*Id.*) The attached note, signed by "Gene", states in pertinent part, "Please give me a chance to prove to you that there are a few good wholesome girls left in the world." (*Id.* at 11.) The response states, "According to the attached document, which you wrote to Officer Stum and then to Officer Goss, you have no problem drawing attention to your sexual preference and the words you

accuse him of using are ones you've used to describe yourself." (*Id.* at 9.)

On May 13, 2012, Dickerson appealed the response to his grievance to the Superintendent. (*Id.* at 7.) In particular, Dickerson asserted that "showers are a right, not a privilege given by C/O's on duty" and demanded justice for Stum's allegedly unprofessional behavior, referred to the instant civil rights action filed on May 8, 2012, and threatened that Stum would "be penalized for his non-proffesional [*sic*] conduct on the job." On June 5, 2012, the Facility Manager responded by upholding the initial response of the Unit Manager. (*Id.* at 6.) The response further stated as follows:

> The shower that was denied was an extra shower that is given to tier workers as a privilege and reward for work on the housing unit. As you were removed from the tier worker job for possession of contraband, you were no longer afforded that privilege. Secondly, there is no evidence to suggest that Officer Stum made derogatory remarks to you, and you offer no evidence to cause me to remand your grievance for further review. Your appeal and any relief sought are denied.

(*Id.*)

It is apparent upon review of the record that Dickerson failed to fully exhaust his administrative remedies with respect to his claims against Defendant Stum. It is apparent that he not only failed to file an appeal to Final Review following the Facility Manager's issuance of a denial of his appeal on June 5, 2012, but it also is apparent

from Dickerson's own reference in his appeal to this lawsuit that he failed to fully exhaust his administrative remedies before filing a lawsuit as is required by the PLRA. Accordingly, we must dismiss Dickerson's claims against Defendant Stum for failure to exhaust his administrative remedies.

### c. Defendant Sanatucci

On April 16, 2012, Dickerson filed Grievance Number 408820 with the Grievance Coordinator of SCI Camp Hill alleging that, on that date, at approximately 9:00 a.m., Corrections Officer Sanatucci gave him yard duty in the rear of the complex picking up trash. (*Id.* at 5.) In his grievance, he alleges that, evidently, during this time period, pill line was called, and Dickerson was not notified by Sanatucci who was "working the bubble that day." (*Id.*) He alleges that, at the 7:30 pill line, one of the nurses informed him that he called A-block twice and notified Sanatucci that Dickerson was required to take medications. (*Id.*) He further alleges that he asked to go to pill line several times and Santucci told him to "wait until they call for you!" (*Id.*) He explains that he takes life-sustaining medications and cannot afford to miss dosages and that when he tried to talk to Sanatucci "he continues to blow me off." (*Id.*) A notation on the bottom of the grievance indicates that it was received on April 18, 2012. (*Id.*)

On May 9, 2012, the Unit Manager issued a response denying Dickerson's

grievance.  (*Id.* at 4.)  The Unit Manager offered the following explanation:

> I have spoken to Officer Sanatucci concerning the events of that morning.
> By your own admission, pill line started at 0730 hours, as it normally
> does.  You were not ordered to do trash duty in the courtyard until 0900
> hours.  Being a tier worker at the time, your door was opened prior to
> Mainline going out, which was approximately 0630 hours.  Knowing that
> you took medication and your door was open, there was no reason why
> you shouldn't have gone to pill line.  You had the means and opportunity
> to do so.  If you didn't go prior to 0900 hours when you were ordered to
> clean the courtyard, you should have informed an officer prior to
> assuming your duties.

(*Id.*)  The Unit Manager therefore found the grievance to be without merit.  (*Id.*)

On May 21, 2012, Dickerson appealed the Unit Manager's response to the

Facility Coordinator.  (*Id.* at 3.)  He stated that the fact that he was a tier worker and

his cell door was open had nothing to do with Sanatucci giving him an order at 8:15

a.m. on April 16, 2012 to cut grass.  (*Id.*)  He then states that he notified Sanatucci two

times about going to pill line and he said "Wait until they call."  (*Id.*)  He then

reiterates that the nurse told him he called "several times" and spoke to Sanatucci who

"failed" to send him down therefore refusing him medication.  (*Id.*)

In a response dated June 4, 2012, the Facility Manager upheld the Unit

Manager's response to the initial grievance.  (*Id.* at 2.)  In particular, the Facility

Manager found that "[t]he record reflects that you did have ample opportunity to

17

attend pill line when your cell was opened that morning." (*Id.*)

It is apparent upon review of the record in this case that, following the Facility Manager's issuance of a decision denying Dickerson's appeal, he did not file an appeal to Final Review with the SOIGA. It also is apparent based upon the fact that Dickerson had not even received the May 9, 2012 response to his initial grievance at the time he filed this lawsuit on May 8, 2012 that he did not fully exhaust his administrative remedies before filing suit as is required by the PLRA. As a result, we must dismiss Dickerson's claims against Defendant Sanatucci.

## II.  PLAINTIFF'S MOTION TO UPHOLD COMPLAINT

Dickerson did not timely file any opposition to the Motion to Dismiss filed on behalf of Defendants, and therefore, by Order dated August 7, 2012, we directed him to file his opposition on or before August 21, 2012 or else the Motion would be deemed unopposed and addressed on the merits. (*See* Doc. 13.)  On August 21, 2012, Dickerson submitted a Motion to Uphold the Complaint (Doc. 15), which is accompanied by a supporting brief (Doc. 14) and exhibits (Doc. 14-1).  Inasmuch as these submissions were made by Dickerson in response to our Order and contain argument in opposition to Defendants' Motion to Dismiss, we construe the filings, taken together, as his opposition to Defendants' Motion.

In his brief in support of his Motion to Uphold Complaint, Dickerson plainly admits that he failed to exhaust his administrative remedies with respect to each of the grievances he filed, specifically Grievance Numbers 408820, 408818, and 412528. (*See* Doc. 14 at 2.)  However, he argues that his Complaint should be "upheld" because he was the "victim of retaliation" in that, while he was housed in the Restricted Housing Unit ("RHU") at SCI Camp Hill and SCI Dallas, he was refused paperwork until May 11, 2012, and his mail also was delayed as a result of his transfer from SCI Camp Hill to SCI Dallas, and he therefore could not exhaust his administrative remedies.  (*See id.* at 2-3, 7.)

We acknowledge that prisoners are only required to exhaust such administrative remedies "as are available", *see* 42 U.S.C. § 1997e(a), and that "[a]vailable" remedies are those "capable of use" or those "at hand"  *Brown*, *supra*, 312 F.3d at 113.

Nevertheless, we conclude that Dickerson's claim that administrative remedies were unavailable to him so as to allow him to fully exhaust his claims is contradicted by the record.  We first note that the record shows that Dickerson submitted Grievance Numbers 408820 and 408818 on April 16, 2012 (*see* Doc. 12-1 at 5) and April 17, 2012 (*see id.* at 10), respectively, and thus it is apparent that the grievance process was available to him to file his initial grievances in those matters.   Further, where the

19

record shows that Dickerson received responses to his appeals to the Facility Manager from the initial denials of those grievances on June 4, 2012 (*see* Doc. 1 at 2) and June 5, 2012 (*see id.* at 6), respectively, which was after the alleged impediment to his ability to pursue grievances was removed on May 11, 2012, his explanation does not address why he did not pursue those grievances to the level of Final Review. In addition, Dickerson's explanation fails to address why he chose to file this lawsuit before fully utilizing the procedures required by DC-ADM 804.

Further, while Dickerson's claim that he was denied paperwork out of retaliation until May 11, 2012 may explain the delay in filing his initial grievance concerning his claims against Defendant McBeth in Grievance Number 412528, which was filed on May 11, it does not explain why, in the time period subsequent to May 11, he did not fully exhaust these claims. More significantly, it does not explain why Dickerson chose to file the instant lawsuit before he even initiating the grievance process with respect to his claims against McBeth. Beyond these points, we find that Dickerson's claim that he was denied paperwork and that his mail was delayed prior to May 11, 2012 is belied by the record in this case, where, on May 7, 2012, he was able to mail his Complaint in this action, which, for unknown reasons, he postdated May 14, 2012, and the Complaint arrived at the Office of the Clerk of Court in

Scranton one day later.  (*See supra* n. 1.)

Based on the foregoing, we find no basis to grant Plaintiff's Motion to Uphold Complaint, and therefore, the Motion will be denied.

## III.    CONCLUSION

For the reasons stated in the above analysis, we shall grant Defendants' Motion to Dismiss and deny Plaintiff's Motion to Uphold Complaint.  Moreover, where this Court lacks the authority to excuse the exhaustion requirement, *see Nyhuis, supra*, 204 F.3d at 73, and where administrative remedies must be exhausted **before** filing suit in federal court, *see Woodford*, *supra*. 548 U.S. at 92; *Oriakhi*, *supra*, 165 Fed. Appx. At 993, any attempt by Dickerson to amend his Complaint would be futile.  *See Grayson, supra*, 293 F.3d at 110-11; *Shane, supra*, 213 F.3d at 117.  Therefore, our dismissal of Dickerson's Complaint will be with prejudice.  An appropriate Order will enter on today's date.